

# Fourth Court of Appeals

## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-12-00430-CR

Charles **ARRINGTON**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 187th Judicial District Court, Bexar County, Texas
Trial Court No. 2011CR1663
Honorable Sharon MacRae, Judge Presiding

Opinion by:    Sandee Bryan Marion, Chief Justice

Sitting:    Sandee Bryan Marion, Chief Justice
Marialyn Barnard, Justice
Luz Elena D. Chapa, Justice

Delivered and Filed:  March 18, 2015

AFFIRMED

This appeal is on remand from the Texas Court of Criminal Appeals.  Charles Arrington is

appealing his conviction on five counts of aggravated sexual assault of a child and one count of

indecency with a child by sexual contact.  In an opinion dated August 14, 2013, this court reversed

appellant's conviction after concluding appellant was denied a fair trial based on the trial court's

failure to include a unanimity instruction in the jury charge and, thus, was egregiously harmed.[1]

*See Arrington v. State*, 413 S.W.3d 106 (Tex. App.—San Antonio 2013), *rev'd & remanded*, ___

---

[1] On appeal, the State conceded the lack of such an instruction in the jury charge was error.

S.W.3d ___, No. PD-1448-13, 2015 WL 170110 (Tex. Crim. App. Jan. 14, 2013). On the State's appeal to the Court of Criminal Appeals, the Court concluded appellant was not egregiously harmed, and remanded the cause to this court for consideration of appellant's remaining issues on appeal.

On original appeal to this court, appellant raised five issues: (1) the trial court committed jury charge error by failing to give a unanimity instruction as to each separate criminal incident alleged at trial, as charged in each separate count/offense in the indictment; (2) the trial court's jury charge error egregiously harmed him; (3) alternatively, the trial court's jury charge error rendered his trial fundamentally unfair, in violation of the Due Process Clause of the Fourteenth Amendment of the United States Constitution; (4) his trial counsel rendered ineffective assistance of counsel by failing to object to the State's elicitation of expert witness testimony about the truthfulness of the complainant's sexual misconduct accusations; and (5) his trial counsel rendered ineffective assistance of counsel by failing to object to the State's elicitation of lay witness testimony about the truthfulness of the complainant's allegations. Because the State conceded error (the first issue), and we reversed based on our conclusion that appellant was egregiously harmed (the second issue), our opinion did not address appellant's final three arguments. After considering these remaining issues, we affirm.

**DUE PROCESS**

Counts one through five and count seven against appellant alleged that, on or about March 26, 2010, appellant committed the offense of aggravated sexual assault of a child (H.A.) by intentionally and knowingly (1) causing the penetration of the female sexual organ of H.A. by appellant's male sexual organ; (2) causing the penetration of the anus of H.A. by appellant's male sexual organ; (3) causing the female sexual organ of H.A. to contact the mouth of appellant; (4) causing the penetration of the mouth of H.A. by appellant's male sexual organ; (5) causing the

penetration of the female sexual organ of H.A. by appellant's finger; and (7) causing the penetration of the anus of H.A. by appellant's finger. Count six asserted a charge of indecency with a child by intentionally and knowingly engaging in sexual conduct or contact on or about the same date by causing H.A., who was under seventeen years of age, to touch part of the genitals of appellant with the intent to arouse or gratify the sexual desire of any person. The State presented evidence of more than one instance of sexual contact to support each count; however, the jury instructions did not specifically inform the jurors that they had to be unanimous about which separate instance of abuse they believed constituted the commission of the offense for purposes of each individual count.[2] Instead, the trial court's instructions permitted the jurors to consider whether appellant was guilty of each of the seven alleged offenses, and the jurors were provided with seven different verdict forms.

Appellant asserts the trial court's failure to submit a unanimity instruction as to each individual count amounted to fundamental trial error in violation of the Due Process Clause to the Fourteenth Amendment to the U.S. Constitution, which mandates automatic reversal of his convictions. We disagree.

"The [U.S. Supreme] Court has held that although the Sixth Amendment right to trial by jury requires a unanimous jury verdict in federal criminal trials, it does not require a unanimous jury verdict in state criminal trials." *McDonald v. City of Chicago, Ill.*, 561 U.S. 742, 766 n.14 (2010); *see also Schad v. Arizona*, 501 U.S. 624, 634 n. 5 (1991) ("[A] state criminal defendant, at least in noncapital cases, has no federal right to a unanimous jury verdict."); *Romero v. State*, 396 S.W.3d 136, 147 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd) (recognizing that,

---

[2] For example, with respect to count one, which alleged that appellant's male sexual organ penetrated H.A.'s female sexual organ, H.A.'s testimony presented evidence of two separate criminal acts that would constitute this offense in her description of the events in her shower and those occurring on the mattress in appellant's girlfriend's living room.

although Sixth Amendment is applicable to the States by virtue of the Fourteenth Amendment, "[t]he United States Constitution clearly does not grant a right to a unanimous verdict"); *Phillips v. State*, 130 S.W.3d 343, 351 n.6 (Tex. App.—Houston [14th Dist.] 2004), *aff'd*, 193 S.W.3d 904 (Tex. Crim. App. 2006). Therefore, we do not believe the trial court's error violated appellant's federal due process rights or amounted to an automatic reversal. *Romero*, 396 S.W.3d at 147 (concluding appellant's argument lacked merit and proceeding to examine appellant's claimed right to unanimity of jury verdict under only Texas law); *see also Almanza v. State*, 686 S.W.2d 157, 172-74 (disapproving of cases which suggest jury charge error requires an "automatic" reversal).

## INEFFECTIVE ASSISTANCE OF COUNSEL

In two issues, appellant asserts trial counsel was ineffective for not objecting to testimony about the truthfulness of H.A.'s sexual misconduct accusations.

### 1. Standard of Review

We review an appellant's claim of ineffective assistance of counsel under the well-established standard of review. *See Strickland v. Washington*, 466 U.S. 668, 690 (1984); *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999). The defendant must show (1) that counsel's performance was deficient, *i.e.*, counsel's assistance fell below an objective standard of reasonableness; and (2) prejudice, i.e., a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Thompson*, 9 S.W.3d at 812. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.* This two-pronged test is the benchmark for judging whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a reliable result. *Id.*

Generally, the trial record will not suffice to establish an ineffective assistance of counsel claim. *Id.* at 813-14. When, as here, ineffective assistance is raised on direct appeal, appellate counsel and the court must proceed on a trial record not developed for the object of litigating or preserving the claim and thus is often incomplete or inadequate for this purpose. *Freeman v. State*, 125 S.W.3d 505, 506 (Tex. Crim. App. 2003); *cf. Massaro v. United States*, 538 U.S. 500, 504-05 (2003). Nonetheless, some claims may be disposed of on direct appeal where "trial counsel's ineffectiveness is so apparent from the record." *Massaro*, 538 U.S. at 508; *Freeman*, 125 S.W.3d at 507; *see also Andrews v. State*, 159 S.W.3d 98, 103 (Tex. Crim. App. 2005); *Thompson*, 9 S.W.3d at 814 n.6. "[W]hen no reasonable trial strategy could justify the trial counsel's conduct, counsel's performance falls below an objective standard of reasonableness as a matter of law, regardless of whether the record adequately reflects the trial counsel's subjective reasons for acting as [he] did." *Andrews*, 159 S.W.3d at 102.

When the record contains no evidence of counsel's reasons for the challenged conduct, we "'will assume a strategic motivation if any can possibly be imagined,' and will not conclude the challenged conduct constituted deficient performance unless the conduct was so outrageous that no competent attorney would have engaged in it." *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001); *Moran v. State*, 350 S.W.3d 240, 243 (Tex. App.—San Antonio 2011, no pet.). Here, no motion for new trial was filed, and no post-trial evidentiary hearing was held. Therefore, our review is limited to the trial record.

**2. School Counselor's Testimony**

During trial, the State asked Lisa McGinnis, the school counselor, for her opinion on the truthfulness of H.A.'s accusations and the State concedes McGinnis answered direct questions on H.A.'s credibility and truthfulness. Defense counsel did not object. Appellant asserts McGinnis was neither qualified nor presented as an expert on the subject of "manipulation," "fantasy," or

any other accepted, expert-based aspect of credibility. Appellant also asserts McGinnis's testimony was not presented as a response to the defense "opening the door." Appellant asserts the State portrayed McGinnis as an "expert" at trial. Expert testimony that a particular witness is truthful is inadmissible under Texas Rule of Evidence 702. *Yount v. State*, 872 S.W.2d 706, 711 (Tex. Crim. App. 1993).

H.A. had testified she told her friends about the incidents that occurred over spring break. McGinnis approached H.A. twice about rumors, which were circulating at her elementary school, that H.A. was pregnant. The first time, H.A. told McGinnis it was a joke and her friends made her do it. The second time, H.A. told McGinnis about the sexual abuse.

When McGinnis took the stand, the State first questioned her about her qualifications:

> Q:     And so how long have you worked as a school counselor?
> A:     I've been a school counselor for 11 years.
> Q:     And how long have you worked in school administration.
> A:     Twenty-one years.
> Q:     Now, what age groups have you worked with?
> A:     Mostly elementary school but the last two years I worked with middle schools anywhere from five to 15.
> Q:     Now, what kind of education do you have?
> A:     I have a [sic] early childhood education degree, a bachelor's. I have a master's in counseling and then a Ph.D. in counseling and supervision and I'm a licensed professional counselor outside of my school counseling certification.

The State then asked her about H.A.'s credibility:

> Q:     What did — *what details did you see that lent credibility to her story that made you know that she was telling you the truth*?
> A:     I felt that she was telling me the truth based on the fact that she had details, for example, what movie they were watching; that her brother was playing PlayStation when it happened when she was nine; that she could very much put herself in the situation of what was going on exactly at that time. Those were the things that made me feel like she was telling the truth.
> Q:     Okay. Now, what told you that those were the important factors?
> A:     Based on my experience that I've had with other students, based on my educational experience. Those were the things that I fell back on.

Q:     *So you were trained to look for these signs*?
A:     *As a counselor, yes.*

. . .

Q:     . . . I mean, what did she do that might have happened had she been giving a false report?
A:     . . . The first time I talked to her she didn't want to tell me. She was fearful and *that also made me feel like that this was a truthful report.*

[Emphasis added.]

Appellant argues this amounted to an expert opinion that H.A.'s accusation against him was the truth. Appellant asserts trial counsel's failure to object cannot be considered trial strategy, and he relies on several cases that appear to stand for the proposition that there are no circumstances in which allowing a witness to opine on the truthfulness of the complainant in a case where there is no physical or scientific evidence linking the defendant to the crime and credibility of the complainant is the primary issue, might be considered sound trial strategy. *See Fuller v. State*, 224 S.W.3d 823, 835 (Tex. App.—Texarkana 2007, no pet.) ("defense counsel's tactic seems to have been to allow, without objection, the State's witnesses to testify to the credibility and truthfulness of J.W.'s allegations and then, on cross-examination, to explore the foundation for that witness' belief in the credibility, believability, or truthfulness of J.W.'s allegations"); *Sessums v. State*, 129 S.W.3d 242, 248 (Tex. App.—Texarkana 2004, pet. ref'd) ("[W]e find ourselves reviewing the activities of trial counsel in failing to object to clearly and unquestionably objectionable testimony of the most outrageous and destructive type. There is no conceivable strategy or tactic that would justify allowing this testimony in front of a jury."); *Miller v. State*, 757 S.W.2d 880, 884 (Tex. App.—Dallas 1988, pet. ref'd) ("In the present case, we can glean no sound trial strategy in defense counsel's failure to object to the extensive, inadmissible testimony concerning the only real issue at trial—complainant's credibility."); *Garcia v. State*, 712

S.W.2d 249, 253 (Tex. App.—El Paso, pet. ref'd) ("counsel should have made and persisted in valid objections to all of the testimony which permitted Detective Calanche and Yolanda Aguilar to pass upon the credibility of other witnesses").

However, after a review of the record, we do not agree with appellant's contention that defense counsel's performance was outrageous and lacked any possible strategic motive. McGinnis was an outcry witness who spoke to H.A. twice. During the first conversation, H.A. did not admit the abuse to McGinnis; instead, H.A. told McGinnis the pregnancy rumor was merely a misunderstanding with her friends. McGinnis admitted H.A. "was not forthcoming in telling me anything that was going on that was inappropriate." McGinnis did not believe an official report was necessary, although she informed H.A.'s mother about the conversation. The second conversation with H.A. occurred two days later when another rumor circulated that not only was H.A. pregnant, but H.A. thought the baby might be appellant's. McGinnis called H.A. back to her office, and this time, H.A. made her outcry. McGinnis then made her official report. The above questioning occurred in the context of the State asking McGinnis what made her believe H.A. enough to make an official report. During cross-examination, defense counsel asked McGinnis only a few questions.

Our review of the record indicates defense counsel's strategy in not objecting and conducting a limited cross-examination may have been for the purpose of avoiding emphasizing the matter before the jury. Also, McGinnis's testimony was in the context of her following up on the second rumor and her decision to make an official report. We conclude appellant has not satisfied his burden of proving there was no imaginable strategy for defense counsel's failure to object. Therefore, appellant has failed to rebut the strong presumption of effective assistance, and has not shown that counsel's conduct was so outrageous that no competent attorney would engage in it or that the outcome of the trial is unreliable due to counsel's errors.

**3.      The Mother's Testimony**

The State also asked H.A.'s mother questions about H.A.'s truthfulness.  The credibility of a witness may be supported by evidence in the form of opinion, but the evidence may only refer to character for truthfulness and evidence of truthful character is admissible only after the character of the witness for truthfulness has been attacked.  TEX. R. EVID. 608.  Appellant argues he did not "open the door" by attacking H.A.'s credibility, so as to allow H.A.'s mother to provide her opinion on H.A.'s truthfulness.  Appellant points to the following portions of H.A.'s mother's testimony:

> Q:      And has she, I guess, changed from her initial reaction of talking about what happened?
> A:      You mean — not really, no.  You mean, like personality?
> Q:      Yes.  I mean, is she still fearful and embarrassed when she talks about it?
> A:      No but we don't really talk about it all that much but I ask her questions and *she's very honest with her answer and she's not — she doesn't hide the answers.  She tells me the truth.*
>
> . . .
>
> Q:      You didn't think this could happen to your daughter?
> A:      Yes.
> Q:      Did you talk to [H.A.] about the fact that police were going to be involved and she was going to have to —
> A:      Yes.
> Q:      — follow through with that?
> A:      Yes.
> Q:      Did you talk to her about how serious this was?
> A:      Yes.
> Q:      *Did you ask [H.A.] if she was telling the truth?*
> A:      *Yes.*
> Q:      *And what did she say to you?*
> A:      *She said yes and she started crying.*

[Emphasis added.]  Appellant's counsel did not object.

On appeal, appellant asserts that because defense counsel did not attack H.A.'s character for truthfulness, it was improper for the State to elicit this testimony. And, even if H.A.'s character for truthfulness had been attacked, the mother's testimony was not proper rebuttal testimony. Therefore, defense counsel's failure to object constituted ineffective assistance of counsel. We disagree.

The mother's comments were brief and somewhat vague as to the content of what H.A. said that was "truthful." Our review of the record indicates defense counsel's strategy in not objecting may have been for the purpose of avoiding emphasizing the matter before the jury. We conclude appellant has not satisfied his burden of proving there was no imaginable strategy for defense counsel's failure to object. Therefore, appellant has failed to rebut the strong presumption of effective assistance, and has not shown that counsel's conduct was so outrageous that no competent attorney would engage in it or that the outcome of the trial is unreliable due to counsel's errors.

### CONCLUSION

We overrule appellant's remaining issues on appeal and affirm the trial court's judgment.

Sandee Bryan Marion, Chief Justice

Do not publish